NOT DESIGNATED FOR PUBLICATION

Nos. 123,606
123,607

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of
J.W.B. and J.R.B.,
Minor Children.

MEMORANDUM OPINION

Appeal from Thomas District Court; KEVIN BERENS, judge. Opinion filed August 6, 2021. Affirmed.

*Charles A. Peckham*, of Brown, Creighton & Peckham, of Atwood, for appellant natural father.

*Christopher A. Rohr*, county attorney, for appellee.

*Heather F. Alwin*, of Alwin Legal Services, LLC, of Colby, guardian ad litem.

*Justin A. Barrett*, of Barrett Law Firm, P.A., of Colby, for maternal grandparents.

Before SCHROEDER, P.J., MALONE, J., and BURGESS, S.J.

PER CURIAM: The natural father (Father) of J.W.B. and J.R.B. (the children) appeals from the district court's finding of unfitness and termination of his parental rights, claiming the district court erred in finding him unfit and alleging his due process rights were violated. After a careful review of the record, we find no error in the district court's decision to terminate Father's parental rights, and we affirm.

FACTS

Father has two children—J.W.B., born in 2015, and J.R.B., born in 2017—with Mother. By the spring of 2019, Father and Mother had separated and were living apart. In July 2019, the Kansas Department for Children and Families (DCF) received a report the children were playing outside unsupervised near a busy street while Mother was asleep in her home. DCF had also received a report of an altercation that occurred in June 2019 between Mother and the father of her third child. There was no allegation Father was present during either of these events, and the parental rights to Mother's third child are not at issue here.

On July 26, 2019, the State filed a petition alleging the children were in need of care (CINC) under K.S.A. 2019 Supp. 38-2202(d)(1) (lack of adequate parental care), (d)(2) (lack of care or control necessary for physical, emotional, or mental health), and (d)(3) (physical, mental, or emotional abuse or neglect). The bases for the State's allegations were the report of the domestic violence incident in Mother's home and the report the children were unsupervised while in Mother's custody.

The district court held a temporary custody hearing on July 29, 2019. Father and Mother both appeared at the hearing pro se. At the hearing, Father agreed the children should be placed with their maternal grandparents until he could provide DCF with the results of a drug test and DCF could conduct a walk-through of his home. The district court noted Father was currently on probation and ordered the children be placed with their maternal grandparents. The district court then appointed counsel to represent Father in the subsequent proceedings.

The children were adjudicated CINC on September 9, 2019. No record was taken of the adjudication hearing. The district court's journal entry states Father was present at the hearing with counsel, did not contest the adjudication, and the district court had

inquired of Father and found he knowingly and voluntarily entered no-contest statements to the CINC allegations. Father's attorney electronically filed a written no-contest statement on September 10, 2019, which was signed by Father and his attorney. Mother and the guardian ad litem (GAL) also submitted no-contest statements.

The children remained in DCF custody and were placed with their maternal grandparents. St. Francis Ministries (SFM), a contractor for DCF, was given discretion to arrange visitation. SFM worked with the family toward reintegration with an initial permanency goal of the children being returned to either Father's or Mother's home. SFM submitted several reports as to its efforts to work with the family.

Father's initial case plan tasks were to obtain a mental health evaluation and follow any recommendations of the provider, submit to random drug testing, complete a drug and alcohol evaluation in the event of any positive tests, and create a plan to supervise the children and provide them with nutritious meals and snacks. Additional case plan tasks were later added, requiring Father to follow all conditions of his probation, including not committing new crimes, maintaining stable housing and employment, providing SFM with paystubs for employment verification, and signing releases for SFM to obtain information from other participating agencies or entities.

There were consistent concerns with Father's drug use throughout the pendency of the case. He had multiple positive drug tests for marijuana in the fall of 2019. He had a drug and alcohol evaluation in December 2019 but again tested positive for marijuana in January 2020. The district court added adoption as a concurrent permanency goal in January 2020, finding the parents' progress toward reintegration had been insufficient to that point. Father was also arrested on new drug-related charges in February 2020. In May 2020, based on continued concerns as to Father's drug use, he was ordered to submit "consistently clean" drug tests and provide SFM with a copy of his drug and alcohol

3

evaluation. Father's visitation with the children varied, albeit at times because of concerns over the COVID-19 pandemic.

A permanency hearing was held in September 2020. Prior to the hearing, SFM recommended the district court find reintegration was no longer a viable option because no progress had been made in the last 120 days. Father was not present at the permanency hearing but was represented by his attorney. The district court heard testimony from Mother; the children's maternal grandmother (Grandmother); and SFM's permanency specialist, Ivy Wendt. Wendt noted concerns as to both parents, but the vast majority of her concerns were directed toward Mother. Specific to Father, Wendt testified his visits with the children were inconsistent, he had continuing drug issues, and he was still on probation for drug-related offenses. Wendt testified both parents were not "actively working toward reintegration." She recommended the district court find reintegration was no longer viable for both parents.

Grandmother testified both parents' visits with the children were sporadic, and the children seemed to have noticeable behavioral issues after visits. But she generally expressed far fewer concerns with Father's visits, stating he was "probably the most consistent with his visits," although they were "still somewhat erratic," and he would do "good for a while, and then he would stop." Grandmother was concerned Father frequently played videogames during his visits with the children, which she believed exacerbated J.W.B.'s behavioral issues. Specifically, when J.W.B. returned from visits with Father, he would demand to play videogames on hand-held devices Father had given him. But Grandmother acknowledged playing videogames during visits was something Father did to bond with J.W.B., and she never told Father about her concerns over J.W.B. playing videogames during visits. Grandmother believed Father showed some progress during supervised visits.

4

Mother offered very limited testimony as to her own case plan progress and did not testify in regard to any issues pertaining to Father. At the conclusion of the permanency hearing, the district court found reintegration was no longer a viable option. The State subsequently filed a motion for finding of unfitness and termination of parental rights.

In its motion, the State alleged Father was unfit based on conduct of a physically abusive nature towards the children. See K.S.A. 2020 Supp. 38-2269(b)(2). Specifically, the State alleged: "Maternal Grandmother [testified at the permanency hearing] that [J.W.B.] had extensive bruising when he was dropped off at her residence." But Grandmother was only asked whether she had ever seen signs of physical abuse on the children. She responded, "Yes." Grandmother was asked which child showed signs of abuse, and she said J.W.B. When she was asked who J.W.B.'s caretaker was at that time, Grandmother stated it was Mother. Grandmother never gave any specific description of J.W.B.'s injuries, much less testify there was "extensive bruising." The State further alleged Father was unfit due to continuing drug use and detailed multiple instances relating to Father's substance abuse issues. See K.S.A. 2020 Supp. 38-2269(b)(3).

The State also asserted a statutory presumption of unfitness applied to both parents because the children had been in a court-ordered out-of-home placement for more than one year and the parents had substantially failed to carry out their case plan tasks. See K.S.A. 2020 Supp. 38-2271(a)(5).

The district court held a bifurcated two-day termination hearing on December 2, 2020, and December 21, 2020, at which Father personally appeared with counsel. The district court heard relevant testimony from Father, Mother, Grandmother, and Wendt, as well as from Tina Rojas, a support worker with SFM; Anne Ogle, Father's probation supervisor; and Richard Barrett, a detective with the Colby Police Department who testified about Father's previous contacts with law enforcement.

5

Wendt's testimony detailing her concerns regarding Father's fitness was largely the same as her testimony at the permanency hearing. She acknowledged Father successfully completed a mental health evaluation and maintained stable housing and employment since Wendt became involved in the case in October 2019. However, Father had not consistently remained sober. Wendt testified Father tested positive for marijuana in multiple drug tests conducted by SFM. Wendt believed Father had violated his probation while this case was ongoing but admitted she had no personal knowledge of the same. Wendt believed Father's drug issues adversely affected his ability to have visits with the children, and she did not believe he had made any progress since the September 2020 permanency hearing.

To Wendt's knowledge, Father had not had any visits with the children since October 2020. Wendt testified she and other SFM staff tried to contact Father and had not been able to reach him. Wendt acknowledged Father maintained regular remote contact with the children at the outset of the COVID-19 pandemic but stopped doing so around the beginning of April 2020. Wendt did not know why Father stopped making regular remote contact, and Father had not expressed any concerns or difficulties regarding remote contact to Wendt or SFM staff. Wendt also felt Father had sporadic contact with his case plan team, which made it difficult for him to make sufficient progress. Wendt specifically felt Father should have made additional progress in maintaining sobriety and having more consistent visits with the children. But Wendt acknowledged in-person visits had not been possible due to COVID-19 restrictions from mid-March 2020 to July 1, 2020, and again from November 2020 through the date of the termination hearing, and the children had also been quarantined in October 2020 due to COVID-19 concerns. Wendt was unaware if Father had ever been quarantined due to COVID-19. Wendt acknowledged Father completed a drug and alcohol assessment but did not believe he had followed through with all recommendations.

6

Wendt believed Father had not made sufficient progress toward reintegration under his case plan but acknowledged Father was the only parent who completed SFM's parenting class. Wendt was not aware of any concerns observed during Father's supervised visits with the children and had not observed any problems during the visits she personally supervised.

Rojas testified Father had, to her knowledge, maintained suitable housing and employment throughout her involvement in the case. However, Rojas likewise noted Father had ongoing issues with drug use and had tested positive for marijuana as recently as October 2020. Based on Father's positive drug test, SFM would have reverted to supervised visits. But no visits occurred because the children were quarantined for two weeks as a result of COVID-19, and Father never contacted Rojas to set up visits when the children were not quarantined. Rojas observed a strong bond between Father and the children during other visits she supervised but still believed his parental rights should be terminated.

Ogle testified she supervised Father's probation, and Father had tested positive for marijuana in May, August, and December 2019, and again in November 2020. But Ogle acknowledged Father also submitted four negative tests between March 2020 and October 2020. Other than Father's drug use, Ogle believed Father had been compliant with the terms of his probation; he maintained consistent employment and had generally been consistent in keeping in contact with her.

Barrett offered limited testimony regarding Father's prior contacts with law enforcement. He testified Father had been arrested in 2018 in relation to rape and drug charges. In 2019 and 2020, Father had been a victim in two cases. Father had also been a witness in a 2020 drug case. Barrett testified he never experienced any issues with Father other than drug use, and he was consistently able to locate and contact Father.

Grandmother's testimony regarding any concerns with Father was relatively limited and essentially the same as her testimony at the permanency hearing. However, Grandmother provided additional testimony on the second day of the termination hearing—nearly three weeks after the first—that between the two hearing dates, she and the children ran into Father at Walmart. Father stopped to say hello to the children, and they were very emotional because they missed Father a lot.

Father testified he had maintained consistent housing and employment, his home had been inspected by DCF and/or SFM, and he was never told of any concerns about his home by any caseworkers. Father claimed he had been in contact and working with SFM caseworkers since the beginning of the case, and he completed a parenting class and a mental health evaluation. Father testified that during his visits with the children he would try to play with them outside, or draw, color, or play videogames inside. He testified there was a period of four weeks in the fall of 2020 where he could not visit the children because both he and they had been quarantined due to COVID-19. Father admitted to using marijuana but claimed he did so to cope with traumatic events—the death of his brother and a close family friend, and his other brother being diagnosed with lung cancer. But Father asserted he had an appropriate support group to help overcome his drug issues and was using exercise to deal with stress instead of marijuana.

Mother testified only as to her own efforts toward her case plan tasks. Her testimony never mentioned or otherwise referred to Father.

After hearing the evidence, the district court found the statutory presumption of unfitness under K.S.A. 2020 Supp. 38-2271(a)(5) applied, thus shifting the burden of proof to the parents. The district court found neither parent had rebutted the presumption and neither parent was presently fit and able to care for the children or would be in the foreseeable future. The district court noted Father had made the most efforts of either parent; he had maintained stable employment and housing, completed a parenting class,

and completed a drug and alcohol evaluation. However, the district court found Father had not timely acted to get the drug and alcohol evaluation report to the caseworkers, resulting in a significant delay in his ability to work on the recommendations in the report. The district court found Father had not made sufficient efforts toward reintegration with the children given his continued drug use, and Father's conduct was unlikely to change in the foreseeable future.

The district court found Father was unfit and termination of his parental rights was in the children's best interests. Specifically, the district court found the following statutory factors applied to Father:

- K.S.A. 2020 Supp. 38-2269(b)(3) ("use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child");
- K.S.A. 2020 Supp. 38-2269(b)(7) ("failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family");
- K.S.A. 2020 Supp. 38-2269(b)(8) ("lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child");
- K.S.A. 2020 Supp. 38-2269(c)(2) ("failure to maintain regular visitation, contact or communication with the child or with the custodian of the child"); and
- K.S.A. 2020 Supp. 38-2269(c)(3) ("failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home").

Father timely appealed. While Mother's parental rights were also terminated, she is not a party to this appeal. Additional facts are set forth as necessary herein.

ANALYSIS

*Standard of review*

A parent has a constitutionally recognized right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Accordingly, parental rights for a child may only be terminated upon clear and convincing proof of parental unfitness. K.S.A. 2020 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2020 Supp. 38-2269(a), the district court must find "by clear and convincing evidence that the parent is unfit by reason of conduct or condition," making him or her "unable to care properly for a child" and the circumstances are "unlikely to change in the foreseeable future." Clear and convincing evidence is evidence sufficient to establish "that the truth of the facts asserted is highly probable." *In re B.D.-Y.*, 286 Kan. at 697. It is "'an intermediate standard of proof between a preponderance of the evidence and beyond a reasonable doubt.'" *In re Adoption of C.L.*, 308 Kan. 1268, 1278, 427 P.3d 951 (2018).

In reviewing a district court's termination of parental rights, we view all the evidence in the light most favorable to the prevailing party to determine whether a rational fact-finder could have found it highly probable by clear and convincing evidence that parental rights should be terminated. *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). In making this determination, we do not "weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." *In re B.D.-Y.*, 286 Kan. at 705.

Upon making a finding of unfitness of the parent, the district court must "consider whether termination of parental rights . . . is in the best interests of the child. In making this determination, the court shall give primary consideration to the physical, mental and emotional health of the child." K.S.A. 2020 Supp. 38-2269(g)(1). The district court makes the best-interests determination based on a preponderance of the evidence, which is essentially entrusted to the district court acting within its sound judicial discretion. We review the district court's best-interests determination for an abuse of discretion,

> "which occurs when no reasonable person would agree with the district court or the district court premises its decision on a factual or legal error. In determining whether the district court has made a factual error, we review any additional factual findings made in the best-interests determination to see that substantial evidence supports them. [Citation omitted.]" *In re R.S.*, 50 Kan. App. 2d at 1116.

The party asserting the trial court abused its discretion bears the burden of showing such abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

*Discussion*

A.     *The statutory presumption of unfitness under K.S.A. 2020 Supp. 38-2271(a)(5) applies.*

Father first argues the district court erred in applying the statutory presumption of unfitness under K.S.A. 2020 Supp. 38-2271(a)(5) ("the child has been in an out-of-home placement, under court order for a cumulative total period of one year or longer and the parent has substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home"). He asserts there was not clear and convincing evidence he substantially neglected or willfully refused to carry out his case plan tasks. His argument on this point is

11

unpersuasive because he is effectively asking us to reweigh evidence, resolve evidentiary conflicts, or determine credibility, which we cannot do. See *In re B.D.-Y.*, 286 Kan. at 705.

Father asserts the district court did not consider a number of facts showing he made progress toward his case plan tasks. But Father's claim is not supported by the record. Although the district court did not explicitly identify every fact showing Father completed some of his case plan tasks, it acknowledged Father made far more progress than Mother and further noted the tasks Father had completed.

Father's complaint on this issue is largely a contention that the district court's findings were incomplete. But Father needed to object to inadequate findings or a lack of findings. See *McIntyre v. State*, 305 Kan. 616, 618, 385 P.3d 930 (2016). Father does not, however, demonstrate the district court's conclusion was improper. Here, the district court's primary concerns were Father's continued drug use and the inconsistent nature of Father's visits. These same concerns were shared by Wendt, Rojas, and Grandmother, and Father's continued drug use was also reflected in Barrett's and Ogle's testimony. Father is effectively asking us to reweigh evidence by pointing to things that went well in the visits he had with the children, as opposed to the broader concern that his visits were inconsistent and infrequent. Father also points to the fact there were interruptions in his visits due to the COVID-19 pandemic, but the district court acknowledged this concern in its ruling. Father further fails to argue or explain why the district court could not have applied the presumption considering its additional concerns with his repeated drug use.

Father has failed to show the district court's application of the statutory presumption of unfitness was unsupported by clear and convincing evidence.

12

B.      *Father was unfit.*

Father argues the district court erred in finding he was unfit. His argument on this point is unpersuasive because Father has not shown the district court erred in applying the statutory presumption of unfitness, nor does he argue or explain how he met his burden to rebut the presumption. Father is correct the district court made some generalized findings directed toward Father and Mother, despite fairly drastic differences in their individual conduct. But Father again advances an unpersuasive argument insofar as he largely asks us to reweigh evidence concerning his completion of case plan tasks. He further complains the district court erred with respect to its findings as to when he had visits with the children and whether any of those visits were unsupervised. But Father misses the overall thrust of the district court's concern—regardless of whether the visits were supervised or unsupervised, in-person or remote, they were too inconsistent and infrequent to properly facilitate reintegration with the children.

Father further argues his drug use was not a sufficient basis to find him unfit. Father is generally correct the use of drugs, in and of itself, is not an adequate basis to terminate parental rights. K.S.A. 2020 Supp. 38-2269(b)(3) provides the court may consider "the use of intoxicating liquors or narcotic or dangerous drugs *of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child*." (Emphasis added.) But here, the district court did not rely on Father's drug use in isolation as a basis for finding him unfit. Rather, the district court considered the effect Father's drug use had on his visits with the children, his communication and interactions with the caseworkers, and the fact Father seemed to regard the unlawful use of marijuana as an acceptable mechanism for coping with stress and anxiety.

Father fails to directly address the district court's finding that reasonable efforts by appropriate agencies failed to rehabilitate his relationship with the children. See K.S.A.

13

2020 Supp. 38-2269(b)(7). He has not shown error in the district court's finding of unfitness. At best, the point is incidentally raised but not argued in his conclusion on this issue. And a point incidentally raised but not argued is deemed abandoned. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017). Accordingly, Father has not shown error in the district court's termination of his parental rights.

      C.      *Father's due process claims.*

Father finally argues his due process rights were violated because: (1) The district court placed the children with their maternal grandparents instead of Father pending resolution of the case, despite the State's allegations the children were CINC as a result of Mother's actions; (2) the district court erred in accepting Father's no-contest statement to the CINC adjudication; and (3) notice of the termination hearing was not given to the children's paternal grandparents or paternal uncle.

Father's arguments are unpersuasive because he did not timely appeal the CINC adjudication or the district court's temporary custody decision, and both are appealable orders under K.S.A. 2020 Supp. 38-2273(a). The GAL argues we do not have jurisdiction over these points due to Father's failure to timely appeal those rulings. We agree and need not address those issues any further. But even if we do consider Father's arguments on the merits, they are still unpersuasive. Father agreed on the record it was appropriate to place the children with their maternal grandparents at the time the proceedings started. He cannot now complain the district court erred in doing something he explicitly agreed to.

Father's complaint regarding the CINC adjudication lacks support in pertinent authority, and Father acknowledges as much in his brief. Additionally, the journal entry indicates no-contest statements were submitted by the parents and GAL, and: "Upon inquiry the Court finds that [the no-contest statements were] knowingly and voluntarily offered and that there is a factual basis and accepts [them]." Father's attorney also filed a

14

written no-contest statement the next day signed by Father and his attorney, stating he was aware of the consequences of his statement and his responses were freely and voluntarily made.

Father's final argument—proper notice of the termination hearing was not given—is also unpersuasive. He complains notice was not given to the children's paternal grandparents or paternal uncle. The GAL seems correct in arguing notice was not required under the circumstances because K.S.A. 2020 Supp. 38-2267(b)(1) only appears to refer to notice given to relatives whose names and addresses are known. Father did not file an objection to the alleged lack of notice until the day before the termination hearing. To that point, Father never disclosed to any of the parties involved in the action the names and addresses of his mother, father, or brother.

But even assuming notice should have been given to the paternal grandparents or paternal uncle, the error is harmless because Father cannot show prejudice to his own rights based on the lack of notice. See *In re P.M.*, No. 116,024, 2017 WL 2306300, at *5 (Kan. App. 2017) (unpublished opinion); *In re Ch.W.*, No. 114,034, 2016 WL 556385, at *8 (Kan. App. 2016) (unpublished opinion); *In re G.B.*, No. 108,354, 2013 WL 646506, at *1-2. (Kan. App. 2013) (unpublished opinion). Here, Father makes no showing his rights were prejudiced. He fails to explain how giving notice to the paternal grandparents or paternal uncle would have changed the outcome of the case. He does not demonstrate they would have intervened in the case or testified had they been notified. And he does not explain how such intervention or testimony would have changed the district court's decision to terminate his parental rights. Father's argument is unpersuasive. Father has not demonstrated any reversible error in his various due process arguments, and we observe none.

Affirmed.

15